RODNEY F. DYER *vs.* CRANSTON PRINT WORKS CO.

A bill in equity to ascertain and apportion rights in the water of a pond and stream described the boundary line between complainant and respondent as the middle line of the pond and stream as it formerly was before the area of the water had been increased by raising the dam of the pond. This raising was done by a predecessor in title of the respondent while he owned the land on one side, and held the land on the other subject to a mortgage to the complainant.

*Held*, on demurrer, that the bill could be maintained, was not multifarious, and did not require a prior suit at law to determine the boundary.

*Held*, further, that raising the dam could not affect the mortgagee's title, nor subject the flowed land to the provisions of the mill act. The mill act operates between strangers, not between those holding in privity of title.

BILL IN EQUITY to ascertain and apportion rights in certain water property. On demurrer to the bill.

*July* 9, 1892. STINESS, J. The complainant seeks to ascertain and apportion the rights of the parties to this suit in the water of a pond and river, which are averred to belong to both as parts of their respective estates.

The *gravamen* of the charge is, that the respondent uses and claims the right to use and control the entire waters of the pond and river; and that it has, by filling, crowded the stream, the middle line of which was the boundary of the two estates, over on to the complainant's land, thereby confusing the line of division.

The first point taken on demurrer to the bill is, that it is multifarious. We think the point is not well taken. There is but one

question involved, and that is, what are the rights of the parties to the water of the pond and stream. The question cannot be settled without knowing the boundary line, and, that the true line may appear upon the record, the complainant sets forth that it is not the centre line of the pond and river as they now are, having been changed by the raising of the dam and filling, but the centre line as it was before such change.

The statement of the line, as the complainant claims it to be, is necessary to the statement of his claim of right to the water. If there be a controversy upon this point, it is the foundation fact upon which the adjustment of the water right must depend. But a separate bill in equity is not required to establish each essential fact in a suit, and it rarely happens that a bill can be framed with so pointed an issue as that which is here presented. The doctrine stated in *Arnold* v. *Arnold*, 9 R. I. 397, and *Chafee* v. *Quidneck Co.* 13 R. I. 442, cited by the respondent, is quite sufficient to show that this bill is not multifarious.

The next ground of demurrer is, that the complainant's remedy as to the boundary is at law. We think this objection is founded on a misconception of the bill. The bill does not seek to establish a lost boundary; on the contrary, it avers with positive preciseness where the boundary line is, but says, at the same time, that the middle line of the pond and stream has been changed, by the respondents and its predecessors in title, from what it was when his mortgage was given. He does not, however, aver any uncertainty in the boundary on that account. The fact is averred as explanatory of the true line, and as a ground of relief to prevent encroachments and to determine his rights in the water. Another objection is, that the complainant is not entitled to maintain a bill until he has first established his right at law. Undoubtedly there are questions involving water rights which are properly cognizable in a court of law, but they are independent questions of fact, like questions of prescription; questions whether water has been raised above the height to which it may lawfully be raised, or questions whether the alleged rights exist in fact; as in *Jordan* v. *Woodward*, 38 Me. 423, and in *Sprague* v. *Rhodes*, 6 R. I. 56. But in this case the parties are adjoining riparian owners, having common rights in the water of the stream. The bill seeks an ad-

justment of these rights, to say nothing of the relief sought to restrain the respondent from diverting all the water and encroaching upon the complainant's land.    In *Patten Paper Co.* v. *Kaukauna Water Power Co.* 70 Wisc. 659, the court say, after citing numerous cases, that those cases and others clearly sustain the courts in the exercise of their equity powers in adjusting and protecting the rights of parties interested in hydraulic powers.

The ground of the jurisdiction is, that it prevents litigation, and affords a more complete and perfect remedy than could be obtained at law in furnishing the only adequate means of ascertaining and determining the respective rights of the parties.    See Gould on Waters, §§ 539, 540, and cases cited; Angell on Watercourses, 7th ed. cap. 10, § 444 *et sq.*

The final objection is, that the complainant has no right or interest in the water.    The complainant was the owner of the land described in the bill in 1872, when he sold it to the A. & W. Sprague Manufacturing Company, for the sum of $150,000, taking back a mortgage for $100,000.

The westerly boundary of the land set out in the deed was, " by and with the centre line of said pond and said Pocasset River about three thousand five hundred feet."    At the request of said company the deed was given to Albert S. Gallup, who thereupon gave the mortgage with the same description, which included the water rights and appurtenances therewith connected.    From Gallup the title, subject to the mortgage, passed by deed to the A. & W. Sprague Manufacturing Company on the same day; to Z. Chafee November 1, 1873; to the Union Company March 9, 1883; and to the complainant by sale under the mortgage May 23, 1883.

In January, 1885, the Union Company sold to the respondent other land adjoining the estate in question on the west, by the same line through the pond and river contained in the complainant's original deed, which was referred to in said last deed.    While the title to the land on both sides of the pond was in Chafee, he extended the dam on to the land mortgaged to the complainant, raising the pond three and a half feet.    The respondent now claims that the right to maintain the dam and pond as appurtenant to its estate was thereby established; and hence the complainant, as to the land flowed, has now only a claim for damage for flowage.

We are unable to see that this is so.  The statute relating to water-mills, Pub. Stat. R. I. cap. 104, is referred to; but there is no-thing in that statute which allows one to avoid the effect of a deed under which he holds his own title by flowing the land conveyed therein.  The complainant's title rests upon deeds bounding upon the centre line of the river and pond.  By that line he sold, in-cluding the water rights, and from that line, including the same water rights, he received back the deed of mortgage, subject to which the deeds in the respondent's chain of title were given. Evidently the mortgage was intended to give security on all that was conveyed by the original deed.  The owner of a dam and pond has a right to convey his interest therein, in whole or in part, as in other property.  The mortgage, therefore, was good for the land and water rights therein described, and Chafee took his title sub-ject to said mortgage.  He had only a defeasible title in the east-erly half of the original pond; but it is now claimed that, by rais-ing the dam and flowing more land, he acquired an indefeasible title to all the water of the pond which thereby became annexed to the bleachery estate on the westerly side.  But this was no pro-ceeding under the mill act.  A man may flow his own land as he pleases; he may raise or lower the dam which flows his own land without losing or acquiring any rights thereby.  A mortgagor is treated as an owner who holds subject to the rights of the mort-gagee, but it would be a strange thing if the mortgagee's title could be varied in legal effect by what the mortgagor may do upon the land while in possession.  The mill act is intended to operate between strangers, and not between those who hold in privity of title; and under these circumstances the act of Chafee was not such an adverse proceeding as to amount to a condemnation of the flowed land as against the mortgagee.

We are of opinion that the bill discloses no lack of right on the part of the complainant to proceed in equity, and that the demurrer must be overruled.

*C. Frank Parkhurst*, for complainant.

*Joseph C. Ely*, for respondent.